UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD D. IRVIN,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL ASTRUE, Commissioner of Social Security Administration,<br><br>        Defendant. | CASE NO.   **C06-5718RBL**<br><br>REPORT AND RECOMMENDATION<br><br>Noted for October 26, 2007 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). This matter has been fully briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

INTRODUCTION

Plaintiff, Richard Irvin, was born 1949. He graduated from high school in 1967, and he has a long history of working as a truck driver. Over the years, Mr. Irvin has reported injuries to both knees, right elbow and wrist, and his back several times (Tr. 230). He significantly injured or strained his back on November 6, 1992, while pulling binding chains, and in May 1998, Mr. Irvine alleged an inability to work since that injury (Tr. 220).

On April 24, 2000, Plaintiff filed concurrent applications for Supplemental Security Income (SSI) Benefits and Disability Insurance Benefits (DIB). During the administrative process, the application for

SSI was approved, but the DIB application was denied. Plaintiff appealed the denial of his application for DIB benefits, and it is that application, the administrative law judge's (ALJ's) written decision denying those benefits, that is being reviewed by this court.

The ALJ in this case applied the five-step sequential evaluation process for determining whether a claimant is disabled (Tr. 49-59). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period at issue (Tr. 51). At step two, the ALJ found that Plaintiff had the following severe impairments: mild degenerative disc disease; gastroesophageal reflux disease; and hiatal hernia (Tr. 56). At step three, the ALJ found that Plaintiff's impairments, alone or in combination, did not meet or equal the requirements of a listed impairment (Tr. 56) The ALJ determined that Plaintiff retained the following residual functional capacity (RFC): lift 35 pounds occasionally, 20 pounds frequently; stand/walk and sit 6 hours per day, with changes of position; occasionally operate foot controls; occasionally climb stairs and stoop, but no scaffolds or ladders; perform detailed, but not complex, tasks (Tr. 58). At step four, Plaintiff proved that he could not perform any of his past work (Tr. 58-59). At step five, relying upon vocational expert testimony, the ALJ found that Plaintiff could perform certain jobs in the national economy, such as: parking lot attendant (98,900 jobs nationally, 1,600 jobs statewide); hand packaging inspector (262,000 jobs nationally, 3,800 jobs statewide); and assembler (211,000 jobs nationally, 4,700 jobs statewide) (Tr. 59). Thus, the ALJ concluded Plaintiff was not entitled to disability benefits. See 20 C.F.R. §§ 404.1520(a) (4) (v), 404.1520(g).

Significantly, Plaintiff's claim for DIB insurance lapsed on December 31, 1997 (Tr. 114), and it is Plaintiff's burden to prove disability by this date last insured. Tidwell v. Apfel, 161 F.3d 599, 600 (9th Cir. 1999). Plaintiff alleges disability beginning November 6, 1992 (Tr. 108), and he has twice previously applied for DIB benefits. He was denied both of the earlier times ( May 7, 1997 and June 25, 1999) (Tr. 49). The ALJ chose not to reopen the earlier applications, and therefore, the relevant period at issue runs from May 7, 1997 through December 31, 1997, which is his last date insured.

Plaintiff contends that the ALJ reopened the earlier record, going back to 1992, de facto, by considering evidence from prior to May 1997 (Pl.'s Br. at 20-24). On the contrary, the ALJ specifically stated that he would not reopen the earlier claim (Tr. 49). The ALJ and the medical expert cited clinical and objective findings from before May 1997 and after December 1997, with clear intention not to reopen

REPORT AND RECOMMENDATION
Page - 2

1  the earlier applications. In effect, by stating that he would not reopen the earlier claim, the ALJ properly
2  narrowed the period at issue.

3       Plaintiff further challenges the ALJ's decision denying his application for DIB benefits.
4  Specifically, Plaintiff argues (1) the ALJ erred by rejecting the opinion evidence from Plaintiff's treating
5  physician Dr. Finkleman and examining psychologist Dr. Keyes; (2) the ALJ erred in his assessment of
6  Plaintiff's credibility; (3) the ALJ erred in his residual functional capacity (RFC) assessment; and (4) the
7  ALJ erred in his hypothetical question posited to the vocational expert (VE). Plaintiff requests the Court
8  to reverse the unfavorable ALJ decision and remand with directions to award disability benefits or to
9  conduct a new hearing.

10  ## DISCUSSION

11       This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the
12  proper legal standard and there is substantial evidence in the record as a whole to support the decision.
13  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence
14  as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S.
15  389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less
16  than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.
17  Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational
18  interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th
19  Cir. 1984).

20  ***B. THE ALJ PROPERLY ASSESSED THE MEDICAL OPINIONS***

21       The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d
22  1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical
23  experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is
24  contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific
25  and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler,
26  722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute
27  substantial evidence that justifies the rejection of the opinion of either an examining physician or a
28  treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881

1   F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's

2   opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the

3   ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from

4   the claimant that conflicted with the treating physician's opinion.

5         Plaintiff argues the ALJ failed to give specific and legitimate reasons for assigning little or no

6   weight to the opinions of Plaintiff's treating physician Dr. Finkleman and examining psychologist Dr.

7   Keyes. After reviewing the record as a whole, the undersigned finds the ALJ properly considered the

8   medical opinions.

9         The ALJ rejected the opinions of Dr. Lowell Finkleman, M.D., because they were premised upon

10  subjective reporting, not hard objective evidence, and Plaintiff's allegations and/or subjective complaints

11  were not credible (see discussion below). The ALJ wrote:

> I do not find the claimant to be credible. His major problem relates to his complaints of back pain, but there is very little evidence of impairment. X-rays in February of 1997 show <u>mild</u> degenerative changes (Exhibit 9F, p31). X-rays two years earlier are normal as was a bone scan (Exhibit 9F, p.40 and 9F, p.38). A 1993 CT scan showed degenerative disc disease with osteophytosis on the left at L5-S1 causing some encroachment upon the exiting left L5 nerve root 9Exhibit 9F, p.51). The claimant's claim for disability rests mainly on the multiple DSHS evaluations completed by his treating physician as well as a deposition (Exhibit 9F, pp. 10-12, 21-22, 28-29, 36-37, 28F p.16; and 30F). Dr. Finkleman maintains that the claimant has chronic low back pain secondary to advanced degenerative disc disease and states that the claimant has episodic sciatic with pain in his legs (Exhibit 30F, p.5). Dr. Finkleman is a family practitioner and not a neurologist or orthopedic physician. His opinion is directly contravened by the objective testing performed on the claimant, and is given some weight but not controlling weight. Dr. Finkleman's opinion is based largely on the claimant's reported complaints which I do not find to be credible. The entire medical record, particularly, the claimant's own pain diaries are revealing about the claimant's level of activity. In 1997, the claimant reported engaging in digging a diversionary ditch, shampooing carpets, mowing lawns, chopping wood and exercising. These heavy to medium activities are not at all consistent with Dr. Finkleman's suggestion that the claimant is limited to half-time sedentary work, nor are these activities consistent with someone who has disabling flares of back pain as Dr. Foreman suggests, since these activities would likely bring on flares, but he continued to do them.

23  Tr. 56-57. Moreover, the ALJ noted that Dr. Finkleman testified in a deposition, and stated in a formal

24  letter, that Plaintiff, during the period at issue, could probably have performed light work, just not his

25  more demanding former work (Tr. 54, 57, 284, 521). Finally, the ALJ noted that in February 2002, Dr.

26  Finkleman opined that Mr. Irvin was probably capable of full time sedentary or light work. Tr. 55.

REPORT AND RECOMMENDATION
Page - 4

1    Turning the focus to Dr. Keyes, the record indicates that Dr. Keyes examined Plaintiff's mental
2 impairments in May 1998, and opined that Plaintiff would have problems with irritability and anger in an
3 occupational setting where stressors were present or where other people responded in a manner Plaintiff
4 did not expect (Tr. 430). Dr. Keyes found this profile to be typical of a chronic pain patient, and
5 diagnosed chronic pain disorder associated both with psychological factors and a general medical
6 condition, as well as a non-specific depressive disorder (Tr. 430). Dr. Keyes stated that Claimant "clearly
7 needed" the services of a chronic pain management program (Tr. 430).  In sum, Dr. Keyes rated
8 Plaintiff's global assessment of functioning (GAU) at 65, indicating mild symptoms (Tr. 430).
9    Plaintiff argues the ALJ improperly rejected the opinion of Dr. Keyes. Plaintiff specifically argues
10 the ALJ failed to include any limitations from chronic pain disorder diagnoses or assessed by Dr. Keyes.
11 The undersigned is not persuaded by Plaintiff's argument. It appears the ALJ properly accepted Dr.
12 Keyes' opinion and did not attempt to discredit it (Tr. 53). The ALJ agreed that Plaintiff had a chronic
13 pain syndrome, but after reviewing all of the medical evidence as a whole the limitations associated with
14 chronic pain did not render Plaintiff disabled.
15    After reviewing the medical records and the ALJ's decision, it is clear to this court that the ALJ
16 properly considered the medical opinions related to Mr. Irvin's alleged disabilities and limitations. The
17 ALJ decision is properly supported by substantial evidence in the record.

18 *B.    THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY*

19    Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority
20 on evaluating plaintiff's subjective complaints. Bunnell requires the ALJ findings to be properly
21 supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the
22 adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a
23 claimant's testimony regarding pain.'" Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d
24 1210, 1215 (11th Cir. 1991)). An ALJ may reject a claimant's subjective complaints, if the claimant is
25 able to perform household chores and other activities that involve many of the same physical tasks as a
26 particular type of job. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in
27 Fair v. Bowen, *supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act
28 does not require that claimants be utterly incapacitated to be eligible for benefits, and many home

1 activities may not be easily transferrable to a work environment where it might be impossible to rest
2 periodically.

3 Here, plaintiff raises the issue of whether the ALJ erred in finding plaintiff's testimony not
4 credible.  As noted above, the ALJ specifically addressed Plaintiff's testimony along with Dr.
5 Finkleman's records.  The ALJ further noted the following observations regarding Plaintiff's credibility:

> The claimant underwent a physical capacities evaluation on February 6, 2002.  The claimant reported that he was able to cook and do house work, although slower.  He was able to perform light yardwork and maintenance.  He stated that he split wood himself in order to heat his home and that his back flared after splitting wood.  The evaluation was completed and concluded that the claimant could perform light work, lifting 20-28 pounds of maximum lifting and half that frequently.  His primary limitations appeared to be subjective complaints of pain to his bilateral hands and knees.  These were not consistent with his performance during the evaluation.  He reported minimal back symptoms.  His biggest limitation seemed to be hand limitations due to Dupuytren's contractures (Exhibit 22F).

Tr. 55.

> There is inconsistent behavior in the record.  He was noted to be mowing lawns and cutting firewood in Exhibit 9F, p.39.  A physical capacities evaluation in May of 1998 found that he could do light to medium level work.  There is no evidence of a neurological basis to the claimant's complaints.  Dupuytren's contractures do not involve nerves and should not cause pain, numbness or hand cramping.  The medical expert indicated that the claimant's impairments do not meet or equal the severity contemplated in the listings.

Tr. 56.

17 After reviewing the ALJ's decision and the administrative record, it is clear the ALJ has provided
18 sufficient evidence to discredit the Plaintiff's allegations of total disability.  In sum, Plaintiff's activities
19 noted by the ALJ are inconsistent with a claim of complete disability.  The medical evidence also does not
20 support Plaintiff's statements concerning his level of limitation.  The court notes it is the ALJ who is
21 responsible for determining credibility, <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999).  The ALJ
22 properly discredited plaintiff's testimony and allegations or pain suggesting total disability.

23 C.   *THE ALJ PROPERLY EVALUATED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY*

24 If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work
25 activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the
26 claimant's residual functional capacity ("RFC") and the physical and mental demands of the work a
27 claimant did in the past.  20 C.F.R. § 404.1520(e).
28 As discussed above the ALJ did not err in his assessment of plaintiff's mental or physical

condition. The ALJ found Plaintiff retained the ability to perform a significant range of light work during the relevant period (Exhibit A to Plaintiff's Opening Brief, which is the copy of the last page of the ALJ's decision inadvertently omitted from the administrative record).  This RFC accounted for Plaintiff's limitations from degenerative disc disease, gastroesophageal reflux disease and hiatal hernia (Tr. 59). After reviewing the record, this court does not find any error in the ALJ's evaluation of the medical evidence, the ALJ's evaluation of Plaintiff's credibility or Plaintiff's RFC, which is consistent with the ALJ's assessment of the medical evidence.

### D.    SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT MR. IRVIN IS ABLE TO PERFORM OTHER WORK IN THE NATIONAL ECONOMY

Plaintiff argues the ALJ erred when he relied on the Vocational Expert's testimony.  Plaintiff argues the Vocational Expert's testimony could not be relied upon because the ALJ's hypothetical posed to the expert failed to include all of plaintiff's limitations.  Here the ALJ relied on the Vocational Expert's testimony to conclude Plaintiff could perform light work as a parking lot attendant, hand packaging inspector, and an assembler.

The Ninth Circuit recently wrote:

> At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir.1990). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f). *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir.2000). Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62. See 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965.  [Footnote omitted]
> This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e) The claimant must be able to perform:
> 1. The actual functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82-62.

Pinto v. Massanari, 249 F.3d 840, 844-845 (9th Cir. 2001).   At step-five the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity.  *See* Tackett v. Apfel,180 F.3d 1094,1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184

1  (9th Civ. 1995). In <u>Tackett</u>, the court noted "there are two ways for the Commissioner to meet the burden
2  of showing that there is other work in 'significant numbers' in the national economy that claimant can
3  perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational
4  Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." <u>Id</u>.

5  Plaintiff's allegation that the ALJ erred when he relied on the Vocational Expert's testimony is
6  without merit. Plaintiff's argument is premised on the allegation that the ALJ failed to properly take into
7  account the medical evidence and Plaintiff's credibility,. As explained above, the ALJ did not err in his
8  analysis of the medical evidence or Plaintiff's testimony. The ALJ is not obligated to accept all of a
9  claimant's proposed limitations, as long as the ALJ's findings are supported by substantial evidence. <u>See</u>
10 <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Accordingly, the ALJ properly relied on the
11 Vocational Expert's testimony.

12                                    CONCLUSION

13  Based on the foregoing discussion, the Court should affirm the Administration's final decision
14 denying plaintiff's application for social security disability benefits. Pursuant to 28 U.S.C. § 636(b)(1)
15 and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service
16 of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a
17 waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating
18 the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **October**
19 **26, 2007**, as noted in the caption.

20  DATED this 2nd day of October, 2007.

                                                     */s/ J. Kelley Arnold*
                                                    J. Kelley Arnold
                                                    U.S. Magistrate Judge